IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EASTERN ELECTRIC CORP. OF NEW JERSEY,<br><br>          Plaintiff<br><br>    v.<br><br>SHOEMAKER CONSTRUCTION CO., et al.,<br><br>          Defendants | :<br>:<br>:<br>:   CIVIL ACTION<br>:<br>:<br>:<br>:<br>:<br>:   NO. 08-3825 |

## MEMORANDUM

Pratter, J.                                                                                     September 3, 2009

      The Court here considers a second motion for entry of default judgment within the context of the lengthy and complicated procedural history of this litigation among the contractors, subcontractors, and owners of a multimillion dollar condominium project in Philadelphia. Much of the procedural history of this case is irrelevant to the pending motion, so the Court presents here only so much of the procedural history as is pertinent to this particular motion.

      Eastern Electric Corp. of New Jersey ("Eastern"), a subcontractor on the condominium project, filed suit in August 2008 against the general contractor (Shoemaker Construction Co.) and the project owners (1419 Tower L.P., Urban Residential, LLC, and Metropolitan Housing Partners, LLC) alleging breaches of the construction contracts. Shoemaker filed cross claims against 1419 Tower and Urban Residential ("Owners") and filed a third-party complaint against VEF-VI – Tower 1419 Project GP, LLC ("Tower 1419") and Christopher H. Martorella that

1

included nearly identical claims and allegations as those in the cross claims. Shoemaker later amended its third-party complaint to join 1419-1425 Locust GP, LLC as an additional third-party defendant.

Upon request from Shoemaker, the Clerk of Court entered default on April 7, 2009 against 1419 Tower and Urban Residential for failure to appear, plead or defend. Shoemaker moved for entry of default judgment on May 8, 2009. The Court ordered 1419 Tower and Urban Residential to respond to Shoemaker's motion on or before June 12, 2009. Neither 1419 Tower nor Urban Residential responded to the motion, and the Court granted default judgment against 1419 Tower and Urban Residential on August 21, 2009. See Doc. No. 49.

The Third-Party Defendants also failed to respond to Shoemaker's Amended Third-Party Complaint. The Clerk of Court entered default against 1419-1425 Locust GP, LLC ("1419-1425 Locust"), 1419 Project and Christopher H. Martorella on June 10, 2009. The Court here considers Shoemaker's motion to enter default against 1419-1425 Locust, 1419 Project and Mr. Martorella.

For the reasons set forth below, the Court grants Shoemaker's Motion for Entry of Default Judgment on Amended Third-Party Complaint.

**I. Background**

The Court granted default judgment against 1419 Tower and Urban Residential on August 21, 2009. The Court's Memorandum of that judgment recites an extensive factual background of this case, but a brief summary of the salient facts follows here in order to facilitate an understanding of this related motion.

2

Shoemaker and 1419 Tower, an affiliate of Urban Residential, entered into a written contract (the "Contract") in January 2006 for the rehabilitation and conversion of an office building into a residential building (the "Project"). Amended Third-Party Compl. ¶ 7. 1419 Tower is a limited partnership whose general partners are 1419-1425 Locust GP and 1419 Project. Id. ¶¶ 2-3. According to the terms of the contract, Shoemaker was to perform construction work for the Project as dictated by the plans and specifications provided by 1419 Tower.

Before entering into the Contract with Shoemaker, 1419 Tower also entered into contracts with a number of design professionals who prepared detailed drawings and specifications for the Project. These were presented to Shoemaker for use in the construction of the Project. Amended Third-Party Compl. ¶¶ 10-15; Ball Aff. ¶ 7.

Shoemaker, in accordance with the Contract and upon review and approval by 1419 Tower, entered into a number of contracts with subcontractors. These subcontractors included Eastern, A.T. Chadwick Service Co., Inc. ("Chadwick"), James J. Gory Mechanical Contracting, Inc. ("Gory"), and Wyatt, Inc. ("Wyatt"). Amended Third-Party Compl. ¶ 17; Ball Aff. ¶ 9, Exhibits D, E, F, and G. In accordance with the terms of the subcontracts, each of the subcontractors agreed (1) to cooperate with Shoemaker regarding claims involving the Owner, (2) to be bound to Shoemaker in the same manner in which Shoemaker was bound to 1419 Tower pursuant to the Contract, and (3) to be ruled by the decisions of a court of competent jurisdiction with respect to related pass-through claims. See e.g., Ball Aff., Exhibit D ¶ 20.

Delays plagued the Project throughout 2006 and 2007. See Doc. No. 49 at 4. In early 2007, as the Project progressed, 1419 Tower was unable to process change orders. Shoemaker

3

worked with Owner to resolve the problem. At Owner's request, on or about April 4, 2007, Shoemaker and Urban Residential entered into a new written agreement (the "Construction Agreement" or "Sub-Job Agreement") for the performance of the then-identified additional work and the altered work. The parties agreed that Shoemaker would use its "reasonable best efforts" to complete the low rise portion of the Project on or before July 31, 2007 and that Shoemaker would use its "best efforts" to complete the high rise portion of the Project by October 31, 2007. Amended Third-Party Compl. ¶ 29; Ball Aff. ¶ 13. In consideration of Shoemaker's undertakings pursuant to the Sub-Job Agreement, Christopher Martorella provided his personal Guaranty of Urban Residential's performance of its payment obligations under the Sub-Job Agreement. Amended Third-Party Compl. ¶ 29(c); Ball Supplemental Aff. ¶ 7. All of the change orders with respect to the Project on and after January 1, 2007 were issued under the Sub-Job Agreement. Amended Third-Party Compl. ¶ 29(e).

Delays continued to affect progress on the Project throughout 2007. See Doc. No. 49 at 4-5. Notwithstanding the numerous delays, Shoemaker was able to obtain individual Certificates of Occupancy ("COs") for 33 units in the low rise portion of the building on January 17, 2008, and secured the final CO for the last unit in the high rise portion of the building on May 3, 2008. Amended Third-Party Compl. ¶ 38; Ball Aff. ¶ 17.

The drawings and specifications prepared by, or on behalf of, 1419 Tower allegedly contained material deficiencies which have caused substantial delays to the Project and disruptions to the work of Shoemaker and its subcontractors. Ball Aff. ¶ 18. Reportedly, there were numerous site conditions discovered during construction that were not shown on the drawings and specifications prepared by the Owner, and which were reportedly unforeseeable to

4

Shoemaker at the time the Contract was signed. As a result, Shoemaker claims that its work was significantly disrupted and delayed under both the Contract and the Sub-Job Agreement. Shoemaker's cost of performance also was greatly increased by the delays. Ball Aff. ¶ 19. Subcontractors submitted delay and disruption claims to Shoemaker, which, in turn, subsequently submitted such claims to the Owner pursuant to the terms of the respective contracts. Amended Third-Party Compl. ¶ 40; Ball Aff. 20.

The unpaid balance of the contract price is $591,136, exclusive of interest. Amended Third-Party Compl. ¶ 41; Ball Aff. ¶ 24. The remaining unpaid sums include Invoice No. 28 (dated August 15, 2008) in the amount of $358,426 and Invoice No. 29 (dated December 23, 2008) in the amount of $232,710. Ball Aff. ¶ 24. 1419 Tower has not objected to either of these invoices.

The aggregate unpaid balance of the contract price on the Sub-Job Agreement is $625,396, exclusive of interest. Amended Third-Party Compl. ¶ 42; Ball Aff. ¶ 26; Ball Supplemental Aff. ¶ 8. This is comprised of Invoice No. 6 (dated May 29, 2008) in the amount of $198,544, Invoice No. 7 (dated July 14, 2008) in the amount of $145,301, and Invoice No. 8 (dated December 23, 2008) in the amount of $281,551, all of which remain unpaid. Ball Aff. ¶ 26.

Pursuant to the terms of the Guaranty, by letter dated December 22, 2008, Shoemaker gave written notice to Christopher Martorella that the amounts due and owing on Invoice No. 6 and Invoice No. 7 had not been paid by Urban Residential. Ball Supplemental Aff. ¶ 9, Ex. 3. Neither Urban Residential nor Mr. Martorella has paid Invoice No. 6 or Invoice. No. 7. Id.; Amended Third-Party Compl. ¶ 57.

Shoemaker, pursuant to the terms of the Guaranty, gave written notice to Mr. Martorella that the amounts due and owing on Invoice No. 8 likewise remained unpaid. Ball Supplemental Aff. ¶ 10, Ex. 4. Neither Urban Residential nor Mr. Martorella has paid Invoice No. 9. Id.; Amended Third-Party Compl. ¶ 58.

Additionally, Shoemaker and the subcontractors (Wyatt, Eastern, Chadwick, and Gory) submitted to 1419 Tower and Urban Residential delay claims for $4,316,138. Shoemaker submitted these claims to 1419 Tower and Urban Residential, but none has yet been paid. Shoemaker seeks $1,066,845 for general conditions and $260,177 for time-related subcontract change orders. Eastern, Chadwick, Gory, and Wyatt have presented delay claims for, respectively, $1,872,280; $235, 999; $431, 703; and $449,134. Ball Aff. ¶¶20, 22; Chadwick Aff. ¶ 6; Episcopo Aff. ¶ 6; Gory Aff. ¶ 7; Ostapowicz Aff. ¶ 7.

## II. Legal Standard

### A. Standard for Entry of Default Judgment Under Rule 55(b)(2)

Pursuant to the Federal Rules of Civil Procedure, once the clerk of court has entered a default, the party seeking the default then must apply to the court for entry of a default judgment. See Fed. R. Civ. 55(b)(2); Fehlhaber v. Indian Trials, Inc., 425 F.2d 715, 716 (3d Cir. 1970) (granting default judgment against a third-party defendant who did not file answers). Generally, the entry of a default judgment is disfavored because it has the effect of preventing a case from being decided on the merits. Thus, because a party is "not entitled to a default judgment as of right," the court must use "sound judicial discretion" in weighing whether or not to enter a default judgment. Prudential-LMI Commercial Ins. Co. v. Windmere Corp., 1995 U.S. Dist.

LEXIS 9948 (E.D. Pa. July 14, 1995) (quoting 10 Wright, Miller & Kane, Federal Practice and Procedure § 2685 (1983).

Before entering a default judgment, a court must consider a number of factors. The Third Circuit Court of Appeals has condensed these factors into three main issues: "(i) whether the plaintiff will be prejudiced if the default is denied, (ii) whether the defendant has a meritorious defense; and (iii) whether the default was the product of defendant's culpable conduct." Spurio v. Choice Security Systems, Inc., 880 F. Supp. 402 (E. D. Pa. 1995) (citing United States v. $55,518.05 in U.S. Currency, 728 F.2d 192, 195 (3d Cir. 1995)); Chamberlain v. Giampapa, 210 F.3d 154 (3d Cir. 2000).[1] A defendant's culpable conduct weighs heavily in the evaluation of whether to grant or set aside a default judgment. Farnese v. Bagnasoco, 687 F.2d 761 (3d Cir. 1982). Because the courts do not favor defaults, a party's culpable conduct can "not be inferred from the default but must appear independently" from the default. Maaco Enters., Inc. v. Beckstead, 2002 U.S. Dist. LEXIS 23623, at *7 (E.D. Pa. Dec. 9, 2002). If there is doubt as to the defendant's culpability, the Court should "err on the side of setting aside the default and reaching the merits of the case." Id at *9.

Once a default judgment has been entered, the well-pleaded, factual allegations of the complaint, except those relating to the damage amount, are accepted as true and treated as though they were established by proof. See Coastal Mart, Inc. v. Johnson Auto Repair, Inc., 2001 U.S. Dist. LEXIS 2645, at *7 (E.D. Pa. Mar. 14, 2001); See also U.S. ex rel. Motley v. Rundle, 340 F. Supp. 807, 809 (E. D. Pa. 1972) (citing Thomson v. Wooster, 114 U.S. 104, 114 (1884)). While

---

[1] At times, the court adds a fourth factor, "the effectiveness of alternative sanctions," to this list. Emcasco v. Sambrick, 834 F.2d 71, 74 (3d Cir. 1987).

7

these well-pleaded allegations are admitted and accepted, "the Court need not accept the moving party's legal conclusions or factual allegations relating to the amount of damages." Broadcast Music, Inc. v. Spring Mountain Area Bavarian Resort, Ltd., 555 F. Supp. 2d 537, 541 (E.D. Pa. 2008) (citing Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990)). A party's default does not suggest that the party has admitted the amount of damages that the moving party seeks. See Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990).

In considering the amount of damages or the truth of an averment of evidence, the Court may make its determination by conducting a hearing or by receiving detailed affidavits from the claimant. Durant v. Husband, 28 F.3d 12, 15 (3d Cir. 1994) (stating that, if necessary, the court may hold a hearing to assess damages); Amresco Financial I L.P. v. Storti, 2000 WL 284203 (E.D. Pa. Mar. 13, 2000) (noting that the entry of a default judgment with an award of damages is proper when such an award can be ascertained from detailed figures in evidence and affidavits). The Court is under no requirement to conduct an evidentiary hearing with testimony, but, rather, such a hearing "may be one in which the [court] asks the parties to submit affidavits and other materials from which the court can decide the issue." Moore's Federal Practice 3d § 55.32[2][c]. If no evidentiary hearing is held, the moving party "must present sufficiently 'detailed affidavits' to permit the court to apply the appropriate factors in awarding statutory damages." Universal City Studios v. Ahmed, 1993 U.S. Dist. LEXIS 14951, at *5 (E.D. Pa. Oct. 18, 1993).

Under Pennsylvania law there is no requirement that a damage calculation meet a standard of mathematical certainty. See J.W.S. Delavau v. E. Am. Transp. & Warehousing, 2002 PA Super 336, P39 (Pa. Super. Ct. 2002); see also Vrabel v. Commonwealth, 844 A.2d 595 (Pa. Cmwlth. 2004) (a party need not quantify damages to a mathematical precision). Rather, a

8

reasonable calculation should be made by looking at the evidence and the affidavits submitted by the moving party. See J & J Sports Prods. v. Roach, 2008 U.S. Dist. LEXIS 109055 (E.D. Pa. July 8, 2008); Kaczkowski v. Bolubasz, 421 A.2d 1027 (Pa. 1980). If a reasonable calculation can not be made from the evidence and affidavits, then a hearing may be held to better determine the appropriate calculations. Bakley v. A & A Bindery, Inc., 1987 U.S. Dist. LEXIS 5546 (E.D. Pa. June 18, 1987) (explaining that a judge may order a hearing on damages when the evidence and affidavits are not sufficiently clear).

## III. Legal Analysis

### A. Upon Consideration of the Conventional Factors, Shoemaker's Motion Should be Granted

With respect to the first factor discussed above, a court must consider whether or not a plaintiff will be prejudiced if the default judgment is not granted. Here, as with the entry of default judgment against 1419 Tower and Urban Residential, Shoemaker asserts that time is of the essence and the entry of a default judgment is necessary. Shoemaker states that 1419 Tower and Urban Residential are being pursued by numerous other creditors and that "[w]ithout the entry of default judgment against 1419-1425 Locust GP, 1419 Project GP and Christopher Martorella, Shoemaker would be prejudiced because it[] would be unable to pursue execution against [the Third-Party Defendants] simultaneously with its pursuit of execution against 1419 Tower and Urban Residential." Shoemaker's Memo. of Law in Support of Motion for Entry of Default Judgment at 17. No party has challenged Shoemaker's assertions in this regard, and, once again, the Court has no independent reason to doubt these assertions.

9

The second factor requires consideration of what, if any, meritorious defense has been offered by the defaulting party. A meritorious defense is one which, "if established at trial, would completely bar plaintiff's recovery." Momah v. Albert Einstein Medical Center, 161 F. R. D. 304, 307 (E. D. Pa. 1995) (citing Foy v. Dicks, 146 F. R. D. 113, 116 (E. D. Pa. 1993)). A party seeking to prove a meritorious defense must allege specific facts that stretch "beyond [a] general denial." In other words, the party cannot rest solely "on the mere recitation of the relevant statutory language or a phrase in the Federal Rules of Civil Procedure." United States v. $55,518.05 in U.S. Currency, 728 F.2d 192 at 195-96.

In this case, 1419-1425 Locust, 1419 Project and Mr. Martorella never responded to Shoemaker's Amended Third-Party Complaint. Indeed, 1419 Tower and Urban Residential have not asserted *any* defense to Shoemaker's cross-claims. As the general partners of 1419 Tower, 1419 Project and 1419-1425 Locust GP are liable to Shoemaker for the obligations of the limited partnership, 1419 Tower. As the Guarantor of Urban Residential under the Sub-Job Agreement, Mr. Martorella is liable fo the payments to Shoemaker that Urban Residential has filed to make to Shoemaker. See *infra*.

Third, a court must consider whether or not the default resulted from defendant's culpable conduct. Culpable conduct relates only to "actions taken willfully or in bad faith." Mike Rosen & Assocs., P.C. v. Omega Builders, 940 F. Supp. 115, 118 (E. D. Pa. 1996) (citing Gross v. Stereo Systems, Inc., 700 F.2d 120, 124 (3d Cir. 1983). In this case, the Court finds no excuse or outside reason apart from the Third-Party Defendants' own conduct that the Third-Party Defendants have defaulted. They have not responded to Shoemaker's Amended Third-Party Complaint, and Shoemaker asserts in its Memorandum that it "served all pleadings, motions and

other documents on 1419 Project GP, 1419-1425 Locust GP, and Christopher Martorella, as appropriate." See Shoemaker's Memo. of Law in Support of Motion for Entry of Default Judgment at 18. 1419 Project, 1419-1425 Locust, and Mr. Martorella have not engaged in the litigation process and have offered no reason for this failure or refusal. The Court finds that this conduct easily qualifies as culpable conduct with respect to the entry of a default judgment. The Court declines to reward recalcitrant, oppositional or uncooperative conduct by the Third-Party Defendants by refusing to entertain the default judgment application.

Although all three of the foregoing factors weigh in favor of granting Shoemaker's motion for entry of default judgment, the Third Circuit Court of Appeals also adds a fourth factor, namely, whether or not alternative sanctions would be appropriate or sufficient in a default situation. Emcasco v. Sambrick, 834 F.2d 71, 74 . The Court has considered at length all three factors and has found that all of them weigh in favor of the granting of a default judgment. Shoemaker has offered a concrete and credible explanation of how it would be prejudiced if the entry of default judgment was further delayed or denied. None of the Third-Party Defendants has asserted *any* defense, much less a meritorious one. Thus, without any response from 1419-1425 Locust, 1419 Project or Mr. Martorella to Shoemaker's claims, and with Shoemaker's timely concerns as to its rights vis-a-vis other creditors also pursuing 1419 Tower and Urban Residential, this Court has no alternative sanction but the entry of a default judgment.

## IV. Legal Calculation of Damages

Given 1419 Tower and Urban Residential's material breach of contract, their apparently

11

deficient plans and specifications for the Project, and the unforeseen site conditions that arose, Shoemaker appears entitled to contract damages. Accordingly, on August 21, 2009, the Court granted default judgment for Shoemaker against 1419 Tower and Urban Residential in the amount of $5,685,130. See Doc. No. 49 at 13-27 (discussing the basis for the legal liability of 1419 Tower and Urban Residential pursuant to the Contract and the Sub-Job Agreement).

Based on the following findings, the Court will enter default judgment for Shoemaker and against 1419 Project and 1419-1425 Locust in the amount of $4,976,392 and against Mr. Martorella in the amount of $636,693.

### A. Shoemaker is Entitled to Default Judgment Against 1419 Project and 1419-1425 Locust as General Partners of 1419 Tower

As described above, 1419 Tower is a limited partnership organized and existing under the laws of the Commonwealth of Pennsylvania. Shoemaker Answer to Compl. ¶ 3. 1419-1425 Locust is the managing general partner of 1419 Tower, and 1419 Project is an additional general partner. Amended Third-Party Compl. ¶¶ 2, 3. "Under Pennsylvania law, all general partners of a Pennsylvania limited partnership are [jointly] liable for the debts and obligations of the partnership." TPS Technologies, Inc. v. Rodin Enterprises, Inc., 816 F. Supp. 345, 350 (E.D. Pa. 1993) (citing 15 Pa.C.S.A. §§ 8327, 8533(b) for the proposition that general partner of limited partnership was liable to contractor for outstanding invoice under contractor's contract with the partnership).

As set forth in the Court's August 21, 2009 Memorandum and as summarized in Exhibit

12

A of this Memorandum, Shoemaker is entitled to judgment against 1419 Tower in the total sum of $4,976,392. This figure is comprised of $660,254, the Base Job Contract Balance plus interest and penalty interest, to and including May 1, 2009, pursuant to the Pennsylvania Contractors and Subcontractors Payment Act ("CASPA"), and $4,316,138, the delay damages incurred by Shoemaker and its subcontractors. For the same reasons, Shoemaker is entitled to a judgment against 1419 Project and 1419-1425 Locust as the general partners of 1419 Tower.

### B. Shoemaker is Entitled to Default Judgment Against Christopher Martorella Under the Guaranty

Christopher Martorella gave a written personal Guaranty in April 2007 in consideration of Shoemaker's agreement to enter into the Sub-Job Agreement with Urban Residential. See Ball Supplemental Aff., Ex. 2. The Guaranty imposed secondary liability on Mr. Martorella in accordance with its terms, in the events that Urban Residential failed to pay amounts due under the Sub-Job Agreement. Liability on the Guaranty arises by its terms three days after written notice of nonpayment from Shoemaker to Mr. Martorella. The operative paragraph of the Guaranty provides:

> The obligation of the Guarantor pursuant to this Guaranty shall arise, and shall be conditioned upon, the failure of Urban [Residential] to make payments to Shoemaker when due under the [Sub-Job Agreement]; provided that Shoemaker shall give prompt written notice by facsimile of any failure of Urban [Residential] to make payments when due to the Guarantor, with a copy to Urban [Residential]. In the event that Urban [Residential] does not cure any default within three (3) days after receipt of the foregoing notice, the Guarantor shall make the payment to Shoemaker.

Ball Supplemental Aff., Ex. 2.

Under Pennsylvania law, "[t]he nature and extent of the liability of a guarantor depends

13

on the terms of the contract of guaranty," and "[i]n ascertaining the meaning of the language of a guaranty contract, the same rules of construction apply as in the case of other contracts." Paul Revere Protective Life Ins. Co. v. Weiss, 535 F. Supp. 379, 386 (E.D. Pa. 1982) (internal citations omitted). In addition,

> [t]he contract of guaranty should be construed as a whole and effect given to all the language employed, if possible. When other instruments constituting parts of the same transaction are either by annexation or reference, or otherwise constitute part of the guaranty, such instruments should be read together and each construed with reference to the other. Thus a writing referred to in a contract of guaranty becomes a part of the guaranty contract by virtue of the references and the two must be considered together in determining the construction and validity of the guaranty contract.

Id. at 386-87 (internal citations omitted). Further, extension of credit to the principal debtor is sufficient consideration for the promise of the guarantor, so a guaranty is enforceable even where consideration did not pass directly to the guarantor. Id. at 385. See also, Internazionale Graniti S.L.R. v. Monticello Granite Ltd., No. 07-1790, 2009 U.S. Dist. LEXIS 70621, at *6 (E.D. Pa. August 12, 2009) (same).

Shoemaker submitted three invoices to Urban Residential under the Sub-Job Agreement which still remain unpaid (Invoice Nos. 6, 7, 8). By letters dated December 22, 2008 and January 28, 2009, Shoemaker gave written notice to Mr. Martorella, promptly providing a copy to Urban Residential, stating that payment had not been received and that Mr. Martorella would be obligated to pay Shoemaker if payment was not received within three (3) days of each respective notice. See Ball Supplemental Aff., Exs. 3,4. Shoemaker never received payments for the invoices. Accordingly, Mr. Martorella appears liable to Shoemaker as a guarantor for the payment obligations of Urban Residential under the Sub-Job Agreement. Because Urban Residential is liable to Shoemaker, as explained in the Court's August 21, 2009 Memorandum,

and because Mr. Martorella guaranteed the Sub-Job Agreement (upon which Urban Residential's liability is based), Shoemaker is entitled to judgment against Mr. Martorella for $636,693 (representing the unpaid Sub-Job Agreement balance plus simple interest at 6% beginning three (3) days after notice was given under the Guaranty), as summarized in Exhibit B of this Memorandum.[2]

Based on the following findings, the Court will enter a default judgment for Shoemaker and against Christopher Martorella in the amount of $636,693.

## IV. CONCLUSION

The Court will enter default judgment against 1419-1425 Locust GP, LLC and VEF VI-Tower 1419 Project GP, LLC in the amount of $4,976,392, as specified in the Summary of Damages included as Exhibit A to this Memorandum and in the accompanying Order. The Court will enter default judgment against Christopher H. Martorella in the amount of $636,693, as specified in the Summary of Damages included as Exhibit B to this Memorandum and in the accompanying Order.

BY THE COURT:

_____
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE

---

[2] Although Shoemaker sought (and was granted by the Court) such interest from 1419 Tower and Urban Residential, Shoemaker does not claim interest or penalty interest under the Pennsylvania Contractor and Subcontractor Payment Act here from Mr. Martorella. See Shoemaker's Memorandum of Law in Support of Motion for Entry of Default Judgment at 25.

15


<u>Exhibit A</u>            **Summary of Damages – General Partners of 1419 Tower**

| Element of Damage | Description | Amount | Invoice Date | Payment Due | Days Late as of 5/1/09 | CASPA Interest through 5/1/09 | CASPA Penalty Interest through 5/1/09 |
|---|---|---|---|---|---|---|---|
| Base Job Contract Balance | Invoice No. 28 | $358,426 | 8/15/08 | 9/14/08 | 229 | $26,985 | $26,985 |
|  | Invoice No. 29 | $232,710 | 12/23/08 | 1/22/09 | 99 | $7,574 | $7,574 |
|  | Sub-Total | $591,136 |  |  |  | $34,559 | $34,559 |
|  | CASPA Interest through 5/1/09 | $34,559 |  |  |  |  |  |
|  | Penalty Interest through 5/1/09 | $34,559 |  |  |  |  |  |
|  | Total Judgment | $660,254 |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
| Element of Damage | Description | Amount |  |  |  |  |  |
| Delay Claims | Shoemaker General Conditions | $1,066,845 |  |  |  |  |  |
|  | Shoemaker Time Related Subcontr. Change Orders | $260,177 |  |  |  |  |  |
|  | Eastern | $1,872,280 |  |  |  |  |  |

|  | Chadwick | $235,999 |  |  |  |  |  |
|--|----------|----------|--|--|--|--|--|
|  | Gory Contracting | $431,703 |  |  |  |  |  |
|  | Wyatt, Inc. | $449,134 |  |  |  |  |  |
|  | Total Judgment | $4,316,138 |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  | **Total** | $4,976,392 |  |  |  |  |  |

<u>**Exhibit B**</u>                                          **Summary of Damages – Christopher Martorella**

| Element of Damage | Description | Amount | Notice Date | Payment Due | Days Late as of 5/1/09 | 6% Interest |
|---|---|---|---|---|---|---|
| Sub Job Contract Balance | Invoice No. 6 | $198,544 | 12/22/08 | 6/28/08 | 127 | $4,145 |
| | Invoice No. 7 | $145,301 | 12/22/08 | 8/13/08 | 127 | $3.033 |
| | Invoice No. 8 | $281,551 | 1/28/09 | 1/22/09 | 89 | $4,119 |
| | Sub-Total | $625,396 | | | | $11,297 |
| | 6% Interest | $11,297 | | | | |
| | Total Judgment | $636,693 | | | | |